## KELLEY & a. v. KENNARD & a.

A vote concerning the construction of a highway, passed at a meeting of the inhabitants of a city (G. L., c. 46, s. 18), is merely advisory, and does not control the action of the city councils.

The number and relative position of paths convenient and suitable for travel on a public bridge are not fixed by law.

A town may make an appropriation necessary for building a convenient public bridge, with a proviso that if enough more to enable the town to build a more convenient one of a certain design is contributed by individuals, and given to the town, the more convenient one shall be built.

PETITION for a temporary injunction, granted by a justice in vacation, and adjourned into the law term. Facts agreed. The plaintiffs are citizens, voters, and tax-payers, and the defendants are a special committee of the city government, of Manchester. December 19, 1879, the mayor and aldermen laid out a highway fifty feet wide in extension of Bridge street across Merrimack river. February 17, 1880, the city councils resolved that a special committee be appointed, with full power to contract for the building of a bridge across the river on Bridge street, at a cost not exceeding

$50,000, according to a plan presented by the city engineer, adopted by the city councils, and known as the middle level plan. The defendants are the committee.

Section 18 of chapter 46 of the Gen. Laws provides that "The mayor and aldermen shall issue their warrant for a general meeting of the inhabitants, for any constitutional or legal purpose, whenever requested to do so in writing by one hundred legal voters." Under this statute there was a meeting of the inhabitants of Manchester May 8, 1880, who voted "that in their opinion said bridge should be built upon the lower level, as it is called, or near thereto, and substantially thereon, and at as little expense as it can be done and made convenient for all parties, safe and enduring, and that the city government be requested and instructed so to construct said bridge, if it can legally be done; that the plan proposed by the committee of the city government was unwise and far too expensive, and if unauthorized, as in the opinion of this meeting it was, the mayor is requested to employ counsel, if necessary, and secure a perpetual injunction * * * upon the contract and the parties thereto, and any and all persons attempting to act under it; that not more than $20,000 or $25,000 should be added to the tax-list this year for the construction of such bridge, and the balance be raised on credit." And the meeting appointed a committee to represent the action of the meeting to the city government, and to confer with them or any committee appointed by them upon the speedy erection of such bridge.

June 1, 1880, by vote of the city councils, the defendants were authorized and directed to contract for an iron bridge across the river, and iron bridges across the canals and over the street on the west side of the river, with iron approaches, all the bridges and approaches to be forty feet wide, and to make such changes in the middle level plan, "in accordance with this resolution," as in their judgment would be for the best interests of the city, the bridges to be finished at an expense to the city not exceeding $60,000; and the committee were "authorized to contract for such a bridge across the river as will provide a roadway or lower deck as a way to the Amoskeag Manufacturing Company and the Stark Mills, provided said companies contribute the sum of $7,000 for the same."

*H. S. Clark,* for the plaintiffs.

The instructions of the citizens' meeting were mandatory upon the city government, and should have been followed. Section 18 of *c.* 46 of the Gen. Laws was copied from the charter of the first New Hampshire city. Laws of 1846, *c.* 384, *s.* 12. In towns money is appropriated by a direct popular vote. The legislature were reluctant to take from the voters the immediate control of their municipal affairs by incorporating cities. And by this clause,

inserted in the first city charter, the power of town legislation was reserved and continued for occasions when the people should choose to exercise it.

The city has no authority to build more than one highway across the river, because only one was laid out.

The city has no authority to build a private way across the river, or to build a private way through a public bridge, or to loan or give its money or credit, directly or indirectly, for the benefit of any corporation having for its object a dividend of profits. *Milhau* v. *Sharp*, 15 Barb. 193; *People* v. *Compton*, 1 Duer 512; Constitution, Art. 5. A simple arithmetical computation shows the $7,000 will not pay one half the cost of the lower deck, which is to be a private way.

The city cannot make a highway, or vary the construction of a bridge or highway, upon the offer of money by any person or corporation, but must construct the same with sole reference to the public good. *Dudley* v. *Butler*, 10 N. H. 281; *Gurnsey* v. *Edwards*, 26 N. H. 224.

The city councils could not authorize their committee to make the contract for building the bridge, or to determine or alter the plan. Such duties, requiring the exercise of discretion and judgment, could not be delegated to the committee. *Gillis* v. *Bailey*, 21 N. H. 150; *Monadnock R. R.* v. *Peterborough*, 49 N. H. 281; *Zottman* v. *San Francisco*, 20 Cal. 90; *Oakland* v. *Carpentier*, 13 Cal. 540; *Peterson* v. *Mayor*, 4 E. D. Smith 413; *Brady* v. *Mayor*, 2 Bosw. 173; *Thompson* v. *Schermerhorn*, 2 Seld. 92—*S. C.*, 9 Barb. 152.

*Patten, Copeland, Cross*, and *Sulloway*, for the defendants.

DOE, C. J. By express statutory provisions, the administration of all the fiscal, prudential, and municipal affairs of a city, and the government thereof, are vested in the city councils; and all powers vested by law in towns, or in the inhabitants thereof, are exercised by the city councils. *Perry* v. *Keene*, 58 N. H. 40. These provisions are not expressly modified by Gen. Laws, *c.* 46, *s.* 18, which requires the mayor and aldermen to call a general meeting of the inhabitants for any purpose not unconstitutional or otherwise illegal, when requested to do so, in writing, by one hundred legal voters. And there is not sufficient ground for holding this section to be an implied qualification of the sections which transfer to city councils the powers of municipal legislation and administration. If the legislature had intended to reserve a popular right of resuming and exercising these powers, it is to be inferred that provision would have been made for organization, official oaths, check-list, and records, and for executing the votes of the meeting, or requiring the city government to execute them. The complicated and conflicting system would require regulation, which the law does not

furnish. The practical difficulties in the way of carrying on the representative government of a city, under an undefined popular power of occasional or constant suspension and control, are great and obvious. And the absence of statutory methods of obviating them is satisfactory evidence of the legislative intention. The vote passed at the meeting of inhabitants, instructing their representatives in the city legislature in regard to this bridge, was merely advisory, as would have been a vote of the same persons instructing their representatives in the state legislature.

As the public convenience may require a sidewalk as well as a carriage track in a highway (*Graves* v. *Shattuck*, 35 N. H. 257, 270), so it may require two carriage tracks. And the law does not require such tracks to be on the same level, nor forbid one to be built over the other. How many tracks there shall be, and what shall be their relative position, are questions of fact to be determined upon considerations of public convenience, and the statute requiring the highway to be suitable for the travel thereon. And the municipal decision of these questions is not subject to an appeal to this court on a bill in equity for an injunction. The case does not raise the question of the right of the public on an elevated railway, or other structure in a highway, to make a use of the land that was not contemplated when the owner's damages were assessed. The plaintiffs are not owners of land under or adjoining this new highway.

The highway across the river was unconditionally and legally laid out; and, a bridge being necessary for the public use of the way, the city can be compelled by indictment to perform its duty of making the way passable by building a bridge which will be a part of the highway on which it is built. G. L., *c.* 71, *s.* 1; *c.* 1, *s.* 25; *State* v. *Canterbury*, 28 N. H. 195, 228, 232.

The plaintiffs admit the necessity of a bridge, but object to the form and expense of the one projected. "Towns may, at any legal meeting, grant and vote such sums of money as they shall judge necessary * * * for building and repairing bridges." G. L., *c.* 37, *s.* 4. The city councils have determined that the public expense shall not exceed $60,000, and have voted to authorize the defendants to contract for a bridge with "a roadway or lower deck as a way to the Amoskeag Manufacturing Company and the Stark Mills, provided said companies contribute the sum of $7,000 for the same." The execution of this conditional vote would furnish two public tracks in the highway, and no private one. Whether the public convenience requires the upper one, or the lower one, or both, is a question of fact which is not brought here, on appeal, by this bill. A construction of a street that makes it accessible from the land on either side is not of itself unlawful. The owners of the adjoining land are a part of the public; and the law does not fix the number of travellers for whose use a highway must be convenient. A law requiring every highway to be equally

useful to all members of the community would prohibit all high-
ways. The question as to the lower track is not made a question
of law by the circumstance that that track is to run to land of the
two companies. *State* v. *Northumberland*, 44 N. H. 628, was a
case of a bridge which only one person had occasion to use. The
number of workmen benefited by a track running to the adjoining
land of these companies might be large; and if their number were
small, it would not turn a question of fact into a question of law.
*Hopkinton* v. *Winship*, 35 N. H. 209, 216; *Parks* v. *Boston*, 8
Pick. 218, 227.

A town can accept a private contribution offered for constructing
a town hall,.sewer, or highway, on a proper plan. 2 Dillon Mun.
Corp., ss. 566–574. The offer may be rejected for defects of the
plan, or other sufficient reason. But if the plan is the best, the
town are not obliged to reject the contribution in order to make an
appropriation of their own money for construction on the same
plan. In this case it does not appear that the proposed plan of
two tracks is not the best for the accommodation of the public.
And, on the ground on which the bill puts the plaintiffs' case, evi-
dence that there is a better plan, or that the sum appropriated is
too large, would be inadmissible. The judgment of the city coun-
cils having been fairly exercised on those points, we could not
quash their proceedings for a difference between their opinion
and ours on questions of fact which the law submits to their deci-
sion.

An individual's gift of a library to a town for public use would
not be illegal merely because it might be or would be more useful
to the donor than to his neighbors. If the Amoskeag and Stark
companies should build the whole of the projected double-track
bridge and give it to the city, the gift would not be rendered un-
lawful by the circumstance that the lower track would be more
useful to the companies and their employés than to others. If
the companies should so far build the bridge as to leave but one
plank necessary for its completion, the legal authority of the city
to furnish a plank, instead of the $60,000 appropriated by the city
councils, would not be withdrawn or suspended. If the companies
should pay into the city treasury a sum equal to the whole cost of
construction less one dollar, the city would not be disabled to
apply the gift to the public use, or to add a dollar to the fund.
How small a part of the cost the city will accept from contributors,
and how large a part the city will bear, are municipal questions of
fact, decided by the municipal government, and not opened by this
bill. A town can appropriate a sum sufficient to buy a fire-engine
of the second class, with a proviso that if enough more to enable
the town to buy one of the first class is contributed by individuals
and given to the town, the best shall be bought. With the appro-
priation and contribution the town may obtain for public use some-
thing better than the town, unassisted, could afford to pay for. To

a like extent, on many subjects, the state power of local legislation is delegated to the popular legislatures of towns, and the representative legislatures of cities. The power of applying a necessary sum of public money for a convenient public bridge on this new highway is the power of applying the same sum, and another sum given by individuals, for a more convenient public bridge at the same place. So far as the questions raised in this case are concerned, it is immaterial whether the power is exercised by the state legislature, or by the city councils to whom the state has delegated it. The delegation of the power does not authorize the court to prohibit its exercise.

Evidence of a donation of $7,000 would tend to show that the city, by accepting it, could obtain a public bridge for $7,000 less than its cost. Such evidence may properly be considered and acted upon by the city. It is as competent as evidence of the amount of land damages and the public cost of construction would be on the question whether the highway should be laid out. Besides expense of construction, there are other things to be considered, such as the safety, durability, and public convenience of the proposed structure, and the cost of maintaining it. But evidence, admissible on the question of the public expense of construction, is not rendered inadmissible by the existence of other questions on which it gives no light. If there are authorities in conflict with this application of elementary principle, we are unable to follow them. *Com.* v. *Cambridge*, 7 Mass. 158, 166; *Com.* v. *Sawin*, 2 Pick. 547; *Parks* v. *Boston*, 8 Pick. 218; *Freetown* v. *County Commissioners*, 9 Pick. 46; *Jones* v. *Andover*, 9 Pick. 146, 153; *Copeland* v. *Packard*, 16 Pick. 217, 220; *Foster* v. *Boston*, 22 Pick. 33; *White* v. *County Commissioners*, 2 Cush. 361; *Crocket* v. *Boston*, 5 Cush. 182, 190; *Townsend* v. *Hoyle*, 20 Conn. 1; *Hoadley* v. *Waterbury*, 34 Conn. 38; *Dudley* v. *Cilley*, 5 N. H. 558; *Dudley* v. *Butler*, 10 N. H. 281, 289; *Smith* v. *Conway*, 17 N. H. 586; *State* v. *Newmarket*, 20 N. H. 519, 521; *Knowles' Petition*, 22 N. H. 361, 363; *Goodwin* v. *Milton*, 25 N. H. 458, 472; *Gurnsey* v. *Edwards*, 26 N. H. 224; *Proctor* v. *Andover*, 42 N. H. 348, 356–359; *Freeman* v. *Plainfield*, 52 N. H. 146.

Two other questions, which there is no apparent necessity of considering, will be examined if a decision of them will be of any practical importance to the parties. The defendants were directed to make such changes, of a certain limited character, in a certain plan, as in their judgment would be for the best interests of the city, and to contract for a double track if the companies contributed $7,000. The objection to the delegation to the defendants of a restricted power of altering the plan and making the contract, and the objection that the city should not act upon a promise of a contribution that might require the cost and risk of litigation for its enforcement, can be easily and properly avoided by a vote of the city councils, altering the plan, and making the contract, and by

the payment of the $7,000 to the city treasurer. When these objections are thus obviated, the injunction will be dissolved.

STANLEY, SMITH, and CLARK, JJ., did not sit: the others concurred.