Rockingham, }
 June, 1894. }

### CURTIS & a. v. BERRY & a.

The mayor and aldermen of a city have no authority to call a meeting of the inhabitants for the purpose of voting upon the adoption of the ballot law.

PETITION of citizens and legal voters of Portsmouth against the mayor and aldermen for a mandamus requiring them to issue their warrant, under P. S., c. 48, s. 17, for a general meeting of the inhabitants of the city for the purpose of voting on the question of adopting, under P. S., c. 33, s. 1, the provisions of c. 33 for city elections. Facts found by the court.

March 29, 1894, a petition, signed by one hundred legal voters of the city, praying the defendants to issue such warrant, was presented to the defendants, who asked the opinion of the city solicitor upon the legality of the meeting which they were requested to call. His opinion has not been given, and nothing more has been done by the defendants. This petition was filed April 19, 1894. The annual city election occurs on the first Tuesday of August. June 28, 1892, the city refused to adopt c. 33 by a vote of yeas 529, nays 844.

*Samuel W. Emery*, for the plaintiffs.

*Ernest L. Guptill* and *Calvin Page*, for the defendants.

WALLACE, J. The first section of the statute (P. S., c. 33, commonly called the ballot law) provides that "Any city in which the municipal officers are elected annually may adopt the provisions of this chapter for such elections by a vote of its qualified voters voting in their respective wards, at meetings the warrants of which contain an article upon that subject-matter. The votes shall be returned and canvassed in the same manner as votes for mayor." The requirement that the voters are to vote on the question "in their respective wards," and the provision that the votes shall be returned and canvassed in the same manner as votes for mayor, make it certain that the legislature did not intend that the votes should be taken at a general meeting of the inhabitants of the city. The votes for mayor must be cast in ward meetings called by the selectmen, and are returned to and canvassed by the city councils. P. S., c. 46, ss. 7-10; c. 47, ss. 1, 2.

The mayor and aldermen have no authority to call ward meetings. They have authority to "issue their warrant for a general meeting of the inhabitants, for any constitutional or legal pur-

pose, whenever requested to do so, in writing, by one hundred legal voters." P. S., c. 48, s. 17. But there is no ground for supposing that the legislature intended that at such meetings action may be taken on subjects which it expressly declares shall be acted upon in ward meetings. *Kelley* v. *Kennard*, 60 N. H. 1. Inasmuch as the defendants have no power to call a meeting at which the ballot law can be lawfully adopted, the petition must be dismissed.

The fact that the selectmen in each ward have all the powers and perform all the duties of the selectmen of towns in calling ward meetings and in all matters relating to elections (P. S., c. 46, s. 7), and that selectmen upon written applications of ten or more voters, or one sixth of the legal voters, must warn special meetings of the voters, and must insert in the warrant for the meeting any subject specified in the application (P. S., c. 41, s. 3), provides a certain way to have the question of the adoption of the ballot law (P. S., c. 33) submitted to the decision of the voters of the city at any time, in accordance with the method provided by the legislature in the law. The views here expressed render it unnecessary to consider any of the other questions argued.

*Petition dismissed.*

DOE, C. J., and CHASE, J., did not sit : the others concurred.